## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MARION ALLEN WHITTEN, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. CIV-24-229-RAW-GLJ** |
| | ) | |
| **MCCURTAIN COUNTY JAIL TRUST;** | ) | |
| **LARRY HENDRIX, individually and in** | ) | |
| **his official capacity; TRENT** | ) | |
| **MITCHELL; JOE EBERT; and** | ) | |
| **TYLER SIVARDS, individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

This matter comes before the Court on motions for partial dismissal and/or total dismissal by all remaining Defendants in this case. Plaintiff Marion Allen Whitten sues, *inter alia*, former jailer Trent Mitchell, alleging various Fourth and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983, arising out of his incarceration at the McCurtain County Jail in Idabel, Oklahoma. Mitchell moves to dismiss all of Plaintiff's claims against him. For the reasons set forth below, the undersigned Magistrate Judge recommends that Defendant Trent Mitchell's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support [Docket No. 71] be GRANTED IN PART and DENIED IN PART.

## PROCEDURAL HISTORY & BACKGROUND

In broad terms, Plaintiff's First Amended Complaint alleges two separate instances in which excessive force was used against him while he was in custody at the McCurtain

County Jail. Plaintiff alleges the first incident occurred on January 1, 2022, when he and jailed Joe Ebert had an argument, at which time Ebert and jailer Tyler Sivard escorted him out of his cell and placed him in a restraint chair. Docket No. 68, pp. 13-14, ¶¶ 79-83. Plaintiff asserts that, immediately after he was placed in the restraint chair, Ebert "unnecessarily and without provocation began to beat Plaintiff about the head and body striking him several times," such as to constitute excessive force. *Id.*, ¶¶ 83, 85-89. He alleges Sivard was present but did nothing to intervene and did not report it. *Id.*, ¶¶ 84-85, 89, 92. Four days later, Ebert failed to report to work, which was sufficient to consider him terminated. *Id.*, p. 15, ¶¶ 99, 102.

The second incident occurred in April 2022, after Plaintiff "attempted to gain the attention of jailers by tapping the isolation cell camera," in order to ask about his previous grievances. *Id.*, p. 20, ¶ 127-127. Plaintiff alleges that in response, jailer Trent Mitchell assaulted him with the JPX 4 Jet Defender pepper ball gun and again locked him in the isolation cell, making him wait thirty minutes before allowing him to shower and "humiliating him while laughing aloud." *Id.*, ¶ 129-130. In the immediately following paragraphs, Plaintiff refers to the actions of Mitchell, as well as Ebert and Sivard (despite there being no allegation Ebert or Sivard was present for the April 2022 incident). *Id.*, ¶¶ 131-138.

Plaintiff first filed suit on these events on January 4, 2023, by filing a pro se prisoner civil rights claim. *See* Eastern District of Oklahoma Case No. CIV-23-005-JFH-GLJ, Docket Nos. 1-2 ("Original Case"). The original Complaint named Defendants McCurtain County Jail Trust ("MCJT"), Larry Hendrix, Joe LNU, and J.C. LNU [Docket No. 1]. In

that Complaint, Plaintiff identified one claim related to the January 2022 incident, but he also stated, "Another incident in which I was J.P.X. pepper balled for hitting camera is how I informed proper person of incidence with happened earlier in year of 2022!" (Original Case, Docket No. 1, p. 5). On January 20, 2023, Plaintiff filed an Amended Complaint, naming Defendants Hendrix, Joe LNU, and **Mitchell** [*Id.*, Docket No. 6]. In this Amended Complaint, Plaintiff's second claim asserts, as relevant, "While in isolation cell I was hitting camera for attention and Trent Mitchel working as Day Shift Supervisor, J.P.X. Pepper ball me 3-5 times and shut the door and left me in there for 30 minutes to an 1 hour before letting me out to shower, only supplied small ounce of detergent to wash off and was laughing at me while/thru entire event." *Id.*, Docket No. 6, p. 5. On February 14, 2023, Plaintiff filed a Second Amended Complaint, naming MCJT, Joe Zappala, Hendrix, and J.C. "MacMillon" [*Id.*,Docket No. 8]. Plaintiff's second claim in this iteration referenced June 2022, but stated, "On this day on about in 2022, Marion Allen Whitten Jr. was J.P.X. pepperballed while in isolation cell and left for 30 min to hr before being allowed to shower pepper spray off, for alledgely [sic] hitting camera, Larry Hendrix and J.C. MacMillon allowed officers-jailers to violate cruel and unusual punishment by ignoring or "Losing" grievances filed on paper on both occurrences." *Id.*, Docket No. 8, p. 5. The Court granted Plaintiff *in forma pauperis* status in this original case, but ultimately dismissed the case on July 13, 2022, for his failure to pay the initial filing fee and failing to advise the Court of his change of address [Docket Nos. 11, 14].

Plaintiff, represented by counsel, filed the present case on July 5, 2024 [Docket Nos. 1-2] ("Present Case"), naming the MCJT; Hendrix, in his individual capacity and in his

official capacity as McCurtain County Jail Administrator; Mitchell; Ebert; Sivard, individually and in his official capacity; and James McMillen, jailer and Assistant Jail Administrator. The Court referred this case to the undersigned Magistrate Judge for all pretrial and discovery matters, pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72 [Docket No. 49]. Upon invitation by the Court, Plaintiff filed his First Amended Complaint on March 5, 2025, which no longer named Tyler Sivard in his official capacity [Docket No. 68]. Each remaining Defendant now moves for partial or full dismissal of the First Amended Complaint [Docket Nos. 70-73].

Plaintiff alleges seven causes of action in his First Amended Complaint: (I) § 1983 claim for a Fourth Amendment violation by use of excessive force, as to Ebert and **Mitchell**; (II) § 1983 claim for a Fourth Amendment violation by failing to intervene to prevent or stop the use of excessive force, as to Ebert, **Mitchell**, and Sivard; (III) § 1983 of failing to adequately train, supervise, and/or control, as to Hendrix in his official capacity and MCJT; (IV) § 1983 claim for a Fourteenth Amendment violation by deliberate indifference to serious medical needs of a pretrial detainee, as to Hendrix, **Mitchell**, McMillen, Ebert, and Sivard; (V) § 1983 claim for a Fourteenth Amendment violation by deliberate indifference to health and safety of a pretrial detainee, as to Hendrix, **Mitchell,** McMillen, Ebert, and Sivard; (VI) § 1983 claim for a Fourteenth Amendment violation by use of excessive force against a pretrial detainee, as to Hendrix, **Mitchell**, McMillen, Ebert, and Sivard; and (VII) § 1983 municipal liability claim under *Monell*[1] as to MCJT. After

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

responsive briefing on the motions wherein Plaintiff agreed McMillen should be dismissed, Plaintiff filed a Joint Stipulation of dismissal, dismissing the claims against McMillen with prejudice [Docket Nos. 72, 78-79]. Plaintiff's First Amended Complaint, like the Original Case, is based on the two main incidents from January and April 2022, but Plaintiff's causes of action do not distinguish between the January 2022 and April 2022 incidents instead lumping the actors together. In total, Plaintiff names Mitchell in five claims. Mitchell moves to dismiss all of Plaintiff's claims against him.

## Legal Standards

Federal Rule of Civil Procedure 8(a) requires Plaintiff to state his claims "intelligibly" to give fair notice of the claims to opposing parties and the Court. *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007); *Monument Builders of Greater Kansas City, Inc., v. American Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989). Imprecise pleadings undermine the utility of the complaint and violate that purpose of Rule 8. *See Knox v. First Security Bank of Utah*, 196 F.2d 112, 117 (10th Cir. 1952). Additionally, while often stated in the context of a § 1983 claim, individual defendants are not to be lumped together as a group, but should be treated as individuals, each with the Plaintiff's own claims against each individual defendant, based on each individual defendant's own behavior. *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (because § 1983 is a "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants."); *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008) (stating complaint must "make clear exactly *who* is alleged to have

done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him . . . as distinguished from collective allegations") (citing *Twombly*, 550 U.S. at 565 n.10,); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-533 (10th Cir. 1998) (holding district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants – "despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]" – and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a] claim"). *See also Goff v. Hukill*, 2010 WL 2595785, at *7 (N.D. Okla. June 24, 2010) (noting the absence of any allegations regarding each defendants' conduct).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557, 570 (2007)). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555 (2007)); *see generally* Fed. R. Civ. P. 8(a)(2) (complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]").

-6-

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in h[is] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Thus, the appropriate inquiry is "'whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'" *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement[.]" *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Mitchell contends Plaintiff's claims against him in the present case are all barred by the statute of limitations and are not saved by Oklahoma's "savings statute," 12 Okla. Stat. § 100, because the Second Amended Complaint in the Original Case did not name him as a Defendant. Additionally, he contends Plaintiff fails to state a claim against him and that he is therefore entitled to qualified immunity.

A. Statute of Limitations and Oklahoma's Savings Statute.

The statute of limitations for § 1983 cases is determined by state law; in Oklahoma, it is two years. *See Herrera v. City of Espanola,* 32 F.4th 980, 989 (10th Cir. 2022) ("[A] federal court looks to the law of the forum state to determine the applicable statute of limitations for a § 1983 action. Typically, this entails looking toward the state statute of limitations for personal injury claims."); *Lawson v. Okmulgee Cnty. Crim. Just. Auth.*, 726

Fed. Appx. 685, 690 (10th Cir. 2018) ("We have determined, as a matter of law, that every § 1983 claim is in essence an action for injury to personal rights, and thus apply the most analogous Oklahoma statute, which provides a two-year limitations period.") (quotation omitted) (citing Okla. Stat. tit. 12, § 95(A)(3) ("Civil actions . . . can only be brought within [two years] after the cause of action shall have accrued, and not afterwards . . . for injury to the rights of another.").  The accrual date, in contrast, is a matter of federal law and determines "when the plaintiff can file suit and obtain relief."  *Herrera*, 32 F.4th at 990 (internal quotations omitted).  Plaintiff alleges the first incident with Ebert took place on January 1, 2022, meaning that Plaintiff originally had until January 1, 2024, in which to file a lawsuit on that claim.  The incident with Mitchell took place sometime in April 2022, meaning Plaintiff had until April 2024 for that claim.  Plaintiff filed his original prisoner pro se lawsuit on January 4, 2023, naming Mitchell in the Amended Complaint, but not the original Complaint or Second Amended Complaint, and the Original Case was dismissed July 13, 2023.  Case No. CIV-23-05-JFH-GLJ, Docket Nos. 14-15.

"Oklahoma's savings statute, 12 Okla. Stat. tit. § 100, affords civil plaintiffs an additional year to refile if a case fails other than on the merits after the original limitations period has expired."  *Eastom v. City of Tulsa*, 563 Fed. Appx. 595, 596 (10th Cir. 2014) (citing *Twashakarris, Inc. v. INS,* 890 F.2d 236, 237 (10th Cir. 1989); *Grider v. USX Corp.,* 1933 OK 13, ¶ 6, 847 P.2d 779, 783).  The Tenth Circuit has applied Oklahoma's savings statute to § 1983 claims.  *See Eastom v. City of Tulsa*, 783 F.3d 1181, 1184 (10th Cir. 2015) (citations omitted).  Plaintiff contends the savings statute applies here and raises this in his First Amended Complaint by noting the relevant dates of the Original Case.  Docket No.

68, p. 2, ¶¶ 3-6. *Herrera*, 32 F.4th at 991 ("If from the complaint, the dates on which the pertinent acts occurred are not in dispute, [then] the date a statute of limitations accrues is . . . a question of law suitable for resolution at the motion to dismiss stage.") (quotation omitted).

Mitchell contends that because he was not identified as a Defendant in the Second Amended Complaint in the Original Case, the savings statute does not apply because he was not a Defendant in the "operative Complaint" at the time the Original Case was dismissed. Federal law requires that "[e]very pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties." Fed R. Civ. P. 10(a). Notwithstanding the clear requirement of Fed. R. Civ. P. 10(a) to "name all the parties" in the caption of the complaint, the Tenth Circuit has held that "a party not properly named in the caption of a complaint may still be properly before the court if the allegations in the body of the complaint make it plain the party is intended as a defendant." *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). In Plaintiff's Original Case, he named Mitchell in his Amended Complaint. Furthermore, although Mitchell was not named in the original Complaint in this case, nor the Second Amended Complaint, the JPX pepper ball incident was relayed in all three iterations, and Plaintiff referred in the Second Amended Complaint to Eighth Amendment violations arising from this incident, and it is clear he intended Mitchell to be a defendant. *Tracewell v. Silver*, 2017 WL 58841, at *3 (N.D. Okla. Jan. 5, 2017) ("Federal district courts in Oklahoma have similarly construed complaints to include people who are not listed in the caption, but whose actions are alleged elsewhere in the complaint, as party defendants.");

*cf. Morris v. City of Sapulpa*, 2010 WL 3733527, at *4 (N.D. Okla. Sept. 17, 2010) ("Given the paucity of Oklahoma law on this subject, the interpretation of [12 Okla. Stat. § 994] by other courts, and the liberal construction afforded the savings statute by Oklahoma courts, this Court will not hold that dismissal of one party from an action on the merits precludes that party's inclusion in a later refiling for purposes of section 100.") (internal citation omitted).  The undersigned Magistrate Judge thus construes the Original Case as inclusive of Mitchell, whose name was included in the caption of the First Amended Complaint because it is clear Plaintiff intended him as a Defendant.  The Oklahoma savings statute therefore applies to Plaintiff's claims against Mitchell, and the motion to dismiss the claims against him as time-barred should be denied on these grounds.

    B.  <u>Counts I and VI: Excessive Force, Fourth and Fourteenth Amendment</u>.

Plaintiff alleges claims of excessive force against Mitchell pursuant to both the Fourth (Count I) and Fourteenth Amendments (Count VI).  Docket No. 68, pp. 23-24, ¶¶ 152-164 & pp. 35-36, ¶¶ 204-208.  "Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment—all depending on where the defendant finds himself in the criminal justice system—and each carries with it a very different legal test."  *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010); *see also Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) ("Determining which amendment applies to an allegation of excessive force requires consideration of 'where the [plaintiff] finds himself in the criminal justice system.'") (quoting *Porro,* 624 F.3d at 1325).  "[W]hen neither the Fourth nor Eighth Amendment applies—when the plaintiff finds himself in the criminal justice system somewhere between the two stools of an initial seizure and post-conviction

punishment—we turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities." *Porro*, 624 F.3d at 1326. It is thus "well-established that the Fourteenth Amendment governs any claim of excessive force brought by a pretrial detainee." *Estate of Booker*, 745 F.3d at 419 (quotation omitted). Plaintiff asserts in his First Amended Complaint that he is a pretrial detainee. Docket No. 68, p. 35, ¶ 204. Accordingly, the Fourteenth Amendment applies here, and Plaintiff's **claim for excessive force pursuant to the Fourth Amendment (Count I) should be dismissed**. *See Porro*, 624 F.3d at 1325 ("The Fourth Amendment protects against '*unreasonable* searches and seizures' and pertains to the events leading up to and including an arrest of a citizen previously at liberty[.]"), leaving his claim for excessive force pursuant to the Fourteenth Amendment (Count VI).

i. Constitutional Violation. For excessive force claims brought pursuant to the Fourteenth Amendment, the Supreme Court instructs that this is a purely objective standard such that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-397 (2015) ("[T]he appropriate standard for a pretrial detainee's excessive force claim is solely an objective one."). Of course, this "turns on the 'facts and circumstances of each particular case.'" *Id.*, 576 at 397 (quoting *Graham v. Connor,* 490 U.S. 386, 396 (1989)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight[,]" as well as "the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and

practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish,* 441 U.S. 520, 540, 547 (1979)). "These considerations include '[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.'" *Wise v. Caffey*, 72 F.4th 1199, 1206 (10th Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). This is not an exclusive list but is illustrative of "the types of objective circumstances potentially relevant to a determination of excessive force." *Kingsley*, 576 U.S. at 397.

Plaintiff alleges in his First Amended Complaint that in April 2022 he tapped on the isolation cell camera to get the attention of the jailers in order to inquire as to previously submitted grievances, and that Mitchell "responded to his inquiries with an assault with the JPX 4 Jet Defender pepper ball gun[,]" then locked him back in the isolation cell for approximately thirty minutes before allowing him to shower off the chemical from the pepper balls. Docket No. 68, p. 20, ¶¶ 127-130. He alleges he posed no threat to Mitchell's safety and that Mitchell could not have reasonably perceived him as a threat, and that, even accounting for the MCJT's interest in managing the MCJ, the force used was excessive and caused him to suffer unnecessary pain and injury. *Id.*, ¶¶ 131-134. *See Kingsley*, 576 U.S. at 398 (explaining that a pretrial detainee can prevail on an excessive force claim by showing that the force "is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."). Importantly, there is no allegation Mitchell

-12-

made any effort to temper the amount of force used, or that he initially attempted a lesser amount of force, and there no information in the First Amended Complaint as to whether Plaintiff's tampering with the camera was a security concern.[2]

As a sidenote, Plaintiff's injuries are unknown in relation to Mitchell's actions. The First Amended Complaint alleges that excessive force caused him "unnecessary physical pain, his emergent physical injuries, the worsening of his condition, the severe emotional distress and mental anguish he suffered, and the hospital, surgical, and other medical expenses he incurred." Docket No. 68, p. 36, ¶ 208. Importantly, however, Plaintiff makes no effort to distinguish between injuries arising from Ebert's alleged actions in January 2022 and Mitchell's alleged actions in April 2022. He does, however, allege that he required treatment from having the pepper ball gun used against him and that he suffered psychological distress. On balance, the undersigned Magistrate Judge finds that Plaintiff's allegations, taken as true and construed in his favor, adequately state a claim that Mitchell used an objectively unreasonable amount of force. Plaintiff's Count VI as to Mitchell with regard to the April 2022 incident should therefore not be dismissed at this stage.

ii. Clearly Established Law. Mitchell has raised the defense of qualified immunity, and Plaintiff is thus also required to show that Mitchell's actions violated clearly established law. Ordinarily, a plaintiff may show that a particular right was clearly established at the time of the challenged conduct by identifying an on-point Supreme Court

---

[2] It seems apparent that tampering with an isolation cell camera *could* represent a legitimate and serious security and safety concern. However, the First Amended Complaint alleges that Plaintiff's actions posed no threat, and the undersigned Magistrate Judge must rely on the allegations on the face of the Complaint at this stage of the proceedings.

or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as he maintains." *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016) (quotation omitted). "The precedent is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (internal quotation and emphasis omitted). "'[C]learly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Instead, it "must be 'particularized' to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987)). However, there is no need for a "'scavenger hunt for prior cases with precisely the same facts.'" *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1167 (10th Cir. 2022) (quoting *Estate of Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (quotation omitted)). Therefore, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotation omitted); *see also Paugh*, 47 F.4th at 1167 ("The key question is whether the defendants had fair warning that their conduct was unconstitutional.") (internal quotation omitted).

"The Tenth Circuit has made clear that using less lethal weapons, such as pepper ball guns, on subjects who do not pose an immediate threat to officers can constitute excessive force." *See Loftis v. Conway*, 2025 WL 675439, at *8 (E.D. Okla. Mar. 3, 2025) (citing, *inter alia*, *Buck v. City of Albuquerque*, 549 F.3d 1269, 1291 (10th Cir. 2008)

(deployment of tear gas, pepper spray and non-lethal projectiles on protesters was an unreasonable use of force where "not one of the suspected crimes charged or uncharged was severe, neither posed a threat to the safety of an officer or others, and neither attempted to flee or evade arrest.") and *Fogarty v. Gallegos*, 523 F.3d 1147, 1160-1162 (10th Cir. 2008) (denying qualified immunity to the defendant officers after finding that hitting a protestor with a less lethal projectile was an excessive use of force where the protestor was unarmed, did not attempt to evade arrest, and "presented no immediate threat to anyone's physical safety."). The undersigned Magistrate Judge finds that, based on this clearly established law, *Buck* and *Fogarty* "make the contours of the right involved – to be free from a violent use of force where the plaintiff is restrained, secured, or not posing an immediate risk – sufficiently clear." *Chapman v. Hedderman*, 2021 WL 2149322, at *6 (W.D. Okla. May 26, 2021) (Defendant's use of pepper-gel gun and subsequent kick to pretrial detainee Plaintiff's chest were objectively unreasonable where she failed "to comply with verbal commands" but there was no "meaningful effort to temper the amount of force used" nor was there a "significant security concern" arising from her behavior "given that officers could simply have closed Plaintiff's cell door."). While not factually identical to *Buck* and *Fogarty* because here Plaintiff was in a jail cell and had tapped on the isolation cell camera, the undersigned Magistrate Judge finds Mitchell was on notice that deployment of non-lethal projectiles against a person who does not pose an immediate threat is a violation of clearly established law. *See McCowan v. Morales*, 945 F.3d 1276, 1287, 1286-1289 (10th Cir. 2019) (Despite a lack of a "factually identical prior case," finding it clearly established by 2011 that "gratuitous application of force to []a fully

subdued, compliant and non-threatening misdemeanant arrestee[] violated the Fourth Amendment."). After taking Plaintiff's First Amended Complaint allegations as true, and in light of the Tenth Circuit's precedent as to the use of nonlethal projectiles on subjects who do not pose an immediate threat, the undersigned Magistrate Judge finds that Mitchell is not entitled to qualified immunity at this stage of the proceedings.

C. Count II:  Failure to Intervene.

Defendant contends Plaintiff's allegations as to this claim are "nondescript" and lacking in sufficient facts. Plaintiff's First Amended Complaint makes no allegation that Mitchell was present for the January 2022 incident and alleges that Mitchell is the one who used the pepper ball gun in the April 2022 incident. Nevertheless, the First Amended Complaint identifies Mitchell in the claim for failure to intervene. The undersigned Magistrate Judge agrees, however, the Plaintiff's Count II lacks the requisite specificity as to Mitchell.

Plaintiff's First Amended Complaint states that "Additionally, and/or alternatively, Ebert, Mitchell and Sivard—each keenly aware that the force being employed was excessive, and despite ample opportunity—failed to intervene to prevent and/or stop each other from using excessive and unreasonable force on Whitten." Docket No. 68, p. 21, ¶ 138. Furthermore, he alleges only that "Ebert, Mitchell, and Sivard, or any of them" "were present at the time excessive physical force was being used against Plaintiff by MCJT personnel[,]" "observed or were otherwise aware of the excessive physical force being used against Plaintiff by MCJT personnel[,]" had a reasonable opportunity to intervene to prevent or stop the excessive physical force from being use against Plaintiff[,]"

-16-

and "failed to intervene to prevent or stop the excessive physical force from being used against Plaintiff." *Id.* ¶¶ 165-169. Plaintiff's First Amended Complaint does not even indicate that Mitchell was present for the January 2022 incident, and only alleges excessive force taken by Mitchell during the April 2022 incident. Plaintiff thus fails to clearly set forth *who* did *what* to *whom*, nor does it identify *when*. *See Robbins*, 519 F.3d at 1250. ("In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.") (citing *Twombly,* 550 U.S. at 565 n.10). "Given the complaint's use of . . . a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id.*, 519 F3d. at 1250. Accordingly, the undersigned Magistrate Judge recommends that Defendant Mitchell's Motion be GRANTED as to Count II, failure to intervene, such that Count II should be dismissed and Michell granted qualified immunity for the entire cause of action.

      D. <u>Count IV, Deliberate Indifference to Serious Medical Needs, in Violation of the Fourteenth Amendment</u>.

Mitchell contends the same flaw as to Count II applies to Count IV, namely, that this claim fails for specificity. Mitchell correctly points out that Plaintiff's First Amended Complaint fails to identify both how he denied Plaintiff medical care and what medical

conditions necessitated medical care at what time. Based on these failures, Mitchell contends he is entitled to qualified immunity on this claim. Plaintiff responds that he sufficiently pleaded that Mitchell denied him needed medical care.

"To state a cognizable claim, Plaintiff must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (quotation omitted). "[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component[.]" *Id.*; *see also Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 307 (10th Cir. 1985) ("[P]retrial detainees are in any event entitled to the degree of protection against denial of medical attention which applies to convicted inmates. Thus [under the Fourteenth Amendment] it is proper to apply a due process standard which protects pretrial detainees against deliberate indifference to their serious medical needs.").

> To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "A medical need is [objectively] serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Clark*[ *v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018)] (alteration in original and citation omitted). The subjective component requires Plaintiff to establish that a medical "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (alteration in original) (quoting *Farmer*, 511 U.S. at 837).

*Strain*, 977 F.3d at 989-990.

Plaintiff alleges in his First Amended Complaint in Count IV that "MCJT, Hendrix,

Mitchell, McMillen, Ebert, and Sivard had an obligation to meet [his] objective medical needs in a timely fashion[,]" and that "Hendrix, Mitchell, McMillen, Ebert, and Sivard . . . knew that delays in treating [his] serious medical needs, and/or the denial of any such treatment, would likely expose [him] to a substantial risk of serious harm."  Docket No. 68, pp. 28, 30, ¶¶ 182, 184.  He alleges "Hendrix, Mitchell, McMillen, Ebert, and Sivard" were aware of Ebert's assault and Mitchell's assault, and of his "obvious, severe injuries, his outward display of extreme pain, and his repeated requests for medical attention, which Hendrix, Mitchell, McMillen, Ebert, and Sivard, and the other jail personnel ignored."  *Id.*, p. 30, ¶ 185(a)-(c).  He continues, stating that "the above-named Defendants" "[i]gnored the fact that at least four of the conditions that [he] was clearly exhibiting (*i.e.*, severe bleeding, unconsciousness, head injury, and severe pain)—all of which the above-named Defendants observed or about which they were otherwise aware—**each** qualified as an 'emergency' medical condition under MCJ's written policies." *Id.*, p. 31, ¶ 189(c).  As part of Count VI, Plaintiff stated, that the excessive force (with no distinction between the January and April events) against him "was a direct and proximate cause of [his] unnecessary physical pain, his emergent physical injuries, the worsening of his condition, the severe emotional distress and mental anguish he suffered, and the hospital, surgical, and other medical expenses he incurred."  *Id.*, p. 36, ¶ 208.

Mitchell is correct that Plaintiff does not identify the harm Mitchell committed, with regard to failing to meet medical needs.  To satisfy the objective component, "[t]he plaintiff selects 'what harm to claim.'"  *Paugh*, 47 F.4th at 1155 (quoting *Mata*, 427 F.3d at 753).  The harm in Count IV as to Mitchell is unidentified on the face of the First Amended

Complaint. Plaintiff alleges that Mitchell delayed a shower by approximately 30 minutes after deploying the pepper ball gun and that he was humiliated. Docket No. 68, p. 20, ¶¶ 130. However, he merely recites a list of generic conditions like bleeding and unconsciousness,[3] using the prefix "*i.e.*," then states "all of which the above-named Defendants [Hendrix, Mitchell, McMillen, Ebert, and Sivard] observed or about which they were otherwise aware." Docket No. 68, p. 31, ¶ 189(c). This assertion of injury, without specifying the event and the injury (or injuries) attributable to each event, wholly fails to identify the harm Mitchell is alleged to have committed during the April 2022 event, with regard to serious medical needs. Plaintiff therefore fails to satisfy the objective component.

Because Plaintiff fails to identify the harm, he likewise fails to satisfy the subjective component. Because Plaintiff has not identified a harm, he does not and cannot identify what other treatment Mitchell should have provided or how such treatment may have provided a better outcome, *see Strain*, 977 F.3d at 994 ("Plaintiff failed to allege what other

---

[3] Ebert asserts in his Reply that even this recitation of injuries is an admitted scrivener's error on the part of Plaintiff, and a direct result of copying and pasting from a different case with the same Plaintiff's counsel. *See* Eastern District of Oklahoma Case No. 22-187-RAW-DES, *Harris v. McCurtain County Jail Trust*, Docket No. 41, p. 30, ¶ 149(c) ("Ignored the fact that at least four of the conditions that Harris was clearly exhibiting (*i.e.*, severe bleeding, unconsciousness, head injury, and severe pain) -- all of which the above-named Defendants observed or about which they were otherwise aware – **each** qualified as an "emergency" medical condition under MCJ's written policies[.]"). Because the claim fails for specificity given the two wholly separate incidents during which different jailers were present, the undersigned Magistrate Judge declines to address this issue. While the undersigned Magistrate Judge may take notice of other publicly-available court records, *see St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[A] court may . . . take judicial notice, whether requested or not []of its own records and files, and facts which are part of its public records."), consideration of Ebert's assertion that Plaintiff's counsel admitted to this scrivener's error would convert this motion to one for summary judgment. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("If a district court intends to rely on other evidence, it must convert the Rule 12(b)(6) motion to a motion for summary judgment, giving proper notice to the parties.").

treatment Defendants should have provided or how transferring Mr. Pratt to a hospital would have produced a better outcome."), or "how the complaint alleges [Ebert's] subjective awareness of [unidentified and unspecified] serious medical needs." *Id.* at 995. Even if the allegation of delayed shower and humiliation were sufficient, Plaintiff has not identified what treatment Mitchell should have provided or how such treatment may have provided a better outcome. *See also Robbins*, 519 F3d. at 1250 ("[W]ith no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."). Accordingly, the undersigned Magistrate Judge recommends that Plaintiff's Count IV as to Mitchell be dismissed as to both the January 2022 incident and the April 2022 incident for failure to state a claim.

     E.  Count V:  Deliberate Indifference to Health and Safety of a Pretrial Detainee.

Finally, Mitchell argues that Count V also fails for lack of specificity. Plaintiff alleges in his First Amended Complaint that "Defendants Hendrix, Mitchell, McMillen, Ebert, and Sivard" were required to "take reasonable measures to guarantee" his safety, including a duty to protect him from violence at the hands of other jailers. Docket No. 68, p. 33, ¶¶ 195-196. He alleges their "regular practice" was to "disregard MCJ's written policies and procedures." *Id.*, p. 34, ¶ 198. While the First Amended Complaint states (twice) that Ebert denied him the opportunity to seek medical attention, *id.*, ¶¶ 199-200, and that Sivard did the same, *id.*, ¶ 201, it makes no such allegation as to Mitchell, nor does it indicate for what purpose he needed medical attention. Count V concludes by alleging "Hendrix, Mitchell, McMillen, Ebert, and Sivard were aware of facts (including Ebert's

initial, unprovoked, and unnecessary assault upon Whitten; the need to protect Whitten from any further physical trauma (due, *inter alia*, to his battered and weakened state, urgent need for medical attention, and inability to protect himself)[.]" *Id.*, ¶ 203.

"The right to custodial medical care is well settled. The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same standard of medical care that the Eighth Amendment requires for convicted inmates." *Estate of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1262 (10th Cir. 2022) (citations and quotation omitted). Deliberate indifference to a pretrial detainee's serious medical needs is a violation of the Eighth Amendment, and the test involves both objective and subjective components. *Mata*, 427 F.3d at 751 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component requires Plaintiff to identify a deprivation that is "sufficiently serious," meaning "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (internal quotation marks omitted). The subjective component goes to the jailer's state of mind, requiring Plaintiff to establish he or she had a "sufficiently culpable state of mind," which in this context is "deliberate indifference to inmate health or safety." *Estate of Beauford*, 35 F.4th at 1262 (quoting *Farmer*, 511 U.S. at 834). "Deliberate indifference means 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* at 1262-

1263 (quoting *Farmer*, 511 U.S. at 837).

The allegations in Plaintiff's First Amended Complaint, described above, fail to connect Mitchell to a specific incident of deliberate indifference to Plaintiff's health and safety needs, including failing to identify a sufficiently serious medical condition for which Mitchell was specifically deliberately indifferent, as well as failing to distinguish between the two known incidents at issue in the First Amended Complaint to identify Mitchell's deliberate indifference. *See Robbins*, 519 F3d at 1250 ("[W]ith no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."). Accordingly, the undersigned Magistrate Judge recommends that Plaintiff's Count IV as to Mitchell be dismissed as to both the January 2022 incident and the April 2022 incident for failure to state a claim.

F. Qualified Immunity.

As noted above, the undersigned Magistrate Judge recommends that Mitchell be denied qualified immunity with respect to Count VI as to the April 2022 incident only. However, Plaintiffs fails to state a claim as to Mitchell in Counts I, II, IV, and V, and he therefore should be granted qualified immunity with respect to these claims.

G. Leave to Amend.

Plaintiff requests in his Response that, in the event dismissal is granted, he be given leave to amend his Complaint yet again. Plaintiff first moved to amend the original Complaint on December 31, 2024, following the filing of multiple Motions to Dismiss the original Complaint [Docket Nos. 36, 40-43]. The parties opposed the motion, and the

undersigned Magistrate Judge denied the motion without prejudice due to Plaintiff's failure to comply with this Court's Loc. Civ. R. 7.1(k) (requiring the motion to amend "be accompanied by a proposed order submitted pursuant to the ECF Policy Manual which specifically sets forth what is being amended[,]" and attaching "a copy of the signed, proposed amended pleading."). Upon Plaintiff's failure to renew his motion to amend after the original Motions to Dismiss were fully briefed, the undersigned Magistrate Judge nevertheless invited Plaintiff to file an Amended Complaint. Plaintiff attempted to do so on March 4, 2024, but said Amended Complaint was stricken for failure to comply with this Court's instruction to include "[a] redline version of the original complaint ("Complaint") as amended" [Docket Nos. 66-67]. Plaintiff submitted a proper First Amended Complaint as directed by the Court on March 5, 2025 [Docket No. 68]. The undersigned Magistrate Judge finds that Plaintiff's repeated failure to cure deficiencies by amendments previously allowed adheres in favor of denying any additional opportunities to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend may be denied for, *inter alia*, "repeated failure to cure deficiencies by amendments previously allowed[.]").

## CONCLUSION

Accordingly, the undersigned Magistrate Judge hereby RECOMMENDS that Defendant Trent Mitchell's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support [Docket No. 71] be DENIED IN PART as to Count VI, Plaintiff's § 1983 claim of excessive force in violation of the Fourteenth Amendment, but otherwise GRANTED. In the event this Report and Recommendation is adopted in whole, the

remaining claims and dismissed claims, *as to Defendant Trent Mitchell*, would be set forth as follows:

**Remaining Claims:**

Count VI (Excessive Force, Fourteenth Amendment):  As to the April 2022 incident only.

**Dismissed Claims:**

Count I (Excessive Force, Fourth Amendment):  All claims against Mitchell;
Count II (Failure to Intervene): All claims against Mitchell;
Count IV (Deliberate Indifference to Serious Medical Needs):  All claims against Mitchell;
Count V (Deliberate Indifference to Health and Safety of Pretrial Detainee):  All claims against Mitchell; and
Count VI (Excessive Force, Fourteenth Amendment):  As to the January 2022 incident only.

**Claims not applicable to Mitchell:**

Count III (Failure to Train, supervise, and/or Control)
Count VII (Municipal Liability).

Any objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

**DATED** this 13th day of June, 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**