## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

MARION ALLEN WHITTEN, JR.,    )
    )
        **Plaintiff,**    )
    )
v.    )    **Case No. CIV-24-229-RAW-GLJ**
    )
**MCCURTAIN COUNTY JAIL TRUST;**  )
**LARRY HENDRIX, individually and in**  )
**his official capacity; TRENT**    )
**MITCHELL; JOE EBERT; and**    )
**TYLER SIVARDS, individually,**    )
    )
        **Defendants.**    )

## REPORT AND RECOMMENDATION

This matter comes before the Court on motions for partial dismissal and/or total dismissal by all remaining Defendants in this case. Plaintiff Marion Allen Whitten sues, *inter alia*, the McCurtain County Jail Trust ("MCJT"), Larry Hendrix in his official capacity, and James McMillen in his individual and official capacities, alleging various Fourth and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983, arising out of his incarceration at the McCurtain County Jail in Idabel, Oklahoma in 2022. MCJT, Hendrix in his official capacity, and McMillen filed a motion to dismiss all of Plaintiff's claims against them. For the reasons set forth below, the undersigned Magistrate Judge recommends that Defendants McCurtain County Jail Trust, Larry Hendrix, in his official capacity, and James C. McMillen's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support [Docket No. 70] be GRANTED as to Defendants MCJT

and Larry Hendrix in his official capacity and DENIED AS MOOT as to Defendant James McMillen.

## PROCEDURAL HISTORY & BACKGROUND

Plaintiff filed this case on July 5, 2024 [Docket Nos. 1-2], naming the McCurtain County Jail Trust ("MCJT"); Larry Hendrix, in his individual capacity and in his official capacity as McCurtain County Jail Administrator; jailer Trent Mitchell; jailer Joe Ebert; jailer Tyler Sivard, individually and in his official capacity; and James McMillen, jailer and Assistant Jail Administrator. The Court referred this case to the undersigned Magistrate Judge for all pretrial and discovery matters, pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72 [Docket No. 49]. Upon invitation by the Court, Plaintiff filed his First Amended Complaint on March 5, 2025, which no longer named Tyler Sivard in his official capacity [Docket No. 68]. Each remaining Defendant now moves for partial or full dismissal of the First Amended Complaint [Docket Nos. 70-73].

In broad terms, Plaintiff alleges two separate instances in which force was used against him. Plaintiff alleges the first incident occurred on January 1, 2022, when he and Ebert had an argument, at which time Ebert and Sivard escorted him out of his cell and placed him in a restraint chair. Docket No. 68, pp. 13-14, ¶¶ 79-83. Plaintiff asserts that, immediately after he was placed in the restraint chair, Ebert "unnecessarily and without provocation began to beat Plaintiff about the head and body striking him several times," such as to constitute excessive force. *Id.*, ¶¶ 83, 85-89. He alleges Sivard was present but did nothing to intervene and did not report it. *Id.*, ¶¶ 84-85, 89, 92. Plaintiff alleges he attempted to file grievances, but that they were destroyed or misplaced, but that McMillen

interviewed him on January 24, 2022, regarding the incident and the unanswered grievances.  *Id.*, ¶¶ 100-101.

The second incident occurred in April 2022, after Plaintiff "attempted to gain the attention of jailers by tapping the isolation cell camera," in order to ask about his previous grievances.  *Id.*, p. 20, ¶ 127-127.  Plaintiff alleges that, in response, Mitchell assaulted him with the JPX 4 Jet Defender pepper ball gun and again locked him in the isolation cell, making him wait thirty minutes before allowing him to shower and "humiliating him while laughing aloud."  *Id.*, ¶ 129-130.  In the immediately following paragraphs, Plaintiff refers to the actions of Mitchell, as well as Ebert and Sivard (despite there being no allegation Ebert or Sivard was present for the April 2022 incident). *Id.*, ¶¶ 131-138.

Plaintiff alleges seven causes of action in his First Amended Complaint:  (I) § 1983 claim for a Fourth Amendment violation by use of excessive force, as to Ebert and Mitchell; (II) § 1983 claim for a Fourth Amendment violation by failing to intervene to prevent or stop the use of excessive force, as to Ebert, Mitchell, and Sivard; (III) § 1983 of failing to adequately train, supervise, and/or control, as to **Hendrix in his official capacity** and **MCJT**; (IV) § 1983 claim for a Fourteenth Amendment violation by deliberate indifference to serious medical needs of a pretrial detainee, as to Hendrix (in his individual capacity), Mitchell, **McMillen**, Ebert, and Sivard; (V) § 1983 claim for a Fourteenth Amendment violation by deliberate indifference to health and safety of a pretrial detainee, as to Hendrix (in his individual capacity), Mitchell, **McMillen**, Ebert, and Sivard; (VI) § 1983 claim for a Fourteenth Amendment violation by use of excessive force against a pretrial detainee, as to Hendrix (in his individual capacity), Mitchell, **McMillen**, Ebert,

and Sivard; and (VII) § 1983 municipal liability claim under *Monell*[1] as to **MCJT**. Plaintiff's causes of action do not distinguish between the January 2022 and April 2022 incidents. In total, Plaintiff names MCJT, Hendrix, and/or McMillen in five claims. All parties now move to dismiss some or all of the claims against them. After responsive briefing on the motions wherein Plaintiff agreed McMillen should be dismissed, Plaintiff filed a Joint Stipulation of dismissal, *dismissing the claims against McMillen with prejudice* [Docket Nos. 72, 78-79]. The undersigned Magistrate Judge now turns to the remaining claims against MCJT – Count III, failure to adequately train, supervise, and/or control; and Count VII, municipal liability – as well as the claim against Hendrix in his official capacity – Count III.

## Legal Standards

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557, 570 (2007)). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555 (2007)); *see generally* Fed. R. Civ. P. 8(a)(2) (complaint

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]").

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in h[is] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Thus, the appropriate inquiry is "'whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'" *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement[.]" *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Defendants MCJT and Hendrix contend that the claims against Hendrix in his official capacity are duplicative and subject to dismissal. Additionally, MCJT and Hendrix contend that Plaintiff fails to state a claim against them. The undersigned Magistrate Judge addresses these arguments in turn.

### I.    Hendrix in his Official Capacity.

To establish municipal liability based on Hendrix's conduct, Plaintiff must show Hendrix had final policymaking authority and that Hendrix's decisions (or ratification of a subordinate's decisions) were the moving force behind Plaintiff's constitutional injury. *See Hinkle v. Beckham Cty. Bd. Of Cty. Comm'rs*, 962 F.3d 1204, 1239-1240 (10th Cir. 2020).

Hendrix alleges that because the First Amended Complaint alleges that MCJT delegated final policymaking authority to Hendrix, the claims against Hendrix in his official capacity are duplicative of the claims against MCJT and should be dismissed.  Plaintiff contends that inasmuch as the claims against MCJT and Hendrix in his official capacity overlap, the Court should instead treat them as "one and the same" without dismissing Hendrix because it is statutorily appropriate to name either party.  Additionally, Plaintiff alleges that proceeding with both parties in the case does not cause prejudice because double recovery is disallowed.

Federal Rule of Civil Procedure 17(b)(3) provides that a defendant's capacity to sue or be sued is determined "by the law of the state where the court is located."  Under Oklahoma law, "[e]very action shall be prosecuted in the name of the real party in interest[,]" and "[e]xcept as otherwise provided by law, any person, corporation, partnership, or unincorporated association shall have capacity to sue or be sued."  12 Okla. Stat. § 2017(A) & (B).  Under Oklahoma law, public trusts are considered separate and distinct legal entities from the entity that is its beneficiary.  *See* 60 Okla. Stat. § 176.1(A)(2) ("[A] public trust duly created in accordance with the provisions [of] this title shall be presumed for all purposes of Oklahoma law to . . . Exist as a legal entity separate and distinct from the settlor and form the governmental entity that is its beneficiary[.]").  "Every reference in statute or rule to any duty or responsibility imposed upon the sheriff or any jailer to operate, manage or provide any service to any person in the custody of such facility . . . shall be deemed applicable to and imposed upon the public trust[.]"  19 Okla. Stat. § 513.2(A).  The Supreme Court has long stated, "official-capacity suits generally

-6-

represent only another way of pleading an action against an entity of which an officer is an agent" such that "local government officials sued in their official capacities are 'persons' under § 1983 in those cases in which, as here, a local government would be suable in its own name." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n. 55 (1978). Furthermore, under 19 Okla. Stat. § 4, "Suit may be brought against a county by naming a county officer identified in Section 161 of this title when it is alleged that such officer in his or her official capacity is directly or vicariously liable to plaintiff in an action not arising out of contract." *See also* 19 Okla. Stat. § 161 (defining "county officer" as "the county clerk, county commissioner, county assessor, district court clerk, county treasurer and county sheriff"). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Plaintiff names both the McCurtain County Jail Trust *and* Larry Hendrix in his official capacity as the McCurtain County Jail Trust Administrator in Count III, alleging failure to train. Defendant contends this is duplicative while Plaintiff generally alleges that, to the extent the claims against these parties overlap, the Court should treat them as one party rather than dismissing one defendant or the other. Plaintiff further alleges that MCJT delegated final policymaking authority to Hendrix, including all aspects of the day-to-day operation of the McCurtain County Jail, and that Hendrix therefore had final policymaking authority. Docket No. 68, pp. 9, 13, ¶¶ 55-56, 75.

"The judge, not the jury, should determine who exercises final policymaking authority in a municipality." *Milligan-Hitt v. Bd. of Trs. of Sheridan Cnty. Sch. Dist. No.*

-7-

*2*, 523 F.3d 1219, 1224 (10th Cir. 2008) (citing *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 736-738 (1989).  Importantly, the identity of those final policymakers whose conduct can create municipal liability is "'a question of *state law*,'" such that "the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Jett*, 491 U.S. at 737; *see also Ware v. Unified Sch. Dist. No. 492,  Butler Cty.*, *State of Kan.*, 902 F.2d 815, 819 (10th Cir. 1990) (using Kansas law to assess whether the school board delegated final policymaking authority to Ware, finding "the board has not conceded the delegation of its authority, no provision of law arguably vested Geil with final authority, and his decision was subject to review by the board.").  The only cause of action in which Plaintiff names Hendrix in his official capacity is Count III, in which he also names MCJT. Plaintiff's only response to this is a request that the case proceed as to both defendants, because he acknowledges that double recovery is not allowed.  The undersigned Magistrate Judge finds, however, that the appropriate course is dismissal of Count III as to Hendrix in his official capacity as duplicative of the same cause of action raised against MCJT.  *See Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) ("The district court correctly dismissed the claims against Chief Jordan in his official capacity as duplicative of the claims against the City of Tulsa.") (citing *Graham*, 473 U.S. at 166 ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.").

## II.     Failure to State a Claim – MCJT

Plaintiff alleges in his First Amended Complaint that MCJT was responsible for

preventing the use of excessive force upon him, for preventing Plaintiff and other from being subjected to an unjustifiably high risk of harm that was known and/or obvious, and for ensuring that appropriate measures would be taken in light of such force or risk. Docket No. 68, p. 4, ¶ 16. Furthermore, Plaintiff alleges MCJT has a long-standing culture and practice of disregarding its written policies and permitting its personnel to engage in unnecessary and unreasonable excessive force, permitting law enforcement officers to maintain secrecy and/or falsity reports regarding abuses, as well as a history of deliberate indifference to the serious medical needs of inmates, detainees, and others. *Id.*, pp. 21-22, ¶¶ 140-146.

As to Count III, "Failure to Adequately Train, Supervise, and/or Control Law Enforcement Personnel," Plaintiff alleges MCJT failed to exercise reasonable care in training personnel in the use of force, which failure amounts to deliberate indifference to the rights of persons encountering personnel. He alleges there is a direct causal link between his injuries and pain and this alleged failure to train, and that there is a pattern of similar constitutional violations by untrained and/or unsupervised personnel. Furthermore, he alleges Defendant[s] had actual and/or constructive notice that this amounts to a constitutional violation, but that they deliberately chose to disregard the risk of harm. *Id.*, pp. 26-27, ¶¶ 172-181.

As to Count VII, "*Monell* Liability for Constitutional Violations," Plaintiff alleges that the constitutional violations committed by, *inter alia*, Ebert and Mitchell, were in furtherance of, consistent with, and causally connected to policies, customs, and practices. *Id.*, p. 36-37, ¶ 209. Plaintiff asserts that MCJT had a well-established custom of

disregarding MCJT's written policies as to the minimum training requirements for jail personnel. Docket No. 68, p. 50, ¶ 222. Plaintiff appears to allege that the custom of disregarding policies was a custom of failing to "train, supervise, and/or control" personnel in the following: (i) obligations to refrain from acting with deliberate indifference to serious medical needs of inmates/detainees, (ii) obligations to protect inmates/detainees from violence at the hands of other inmates/detainees, and (iii) regarding proper use of force and/or prohibitions against using constitutionally-excessive or unreasonable force on inmates/detainees. *Id.*, pp. 50-51, ¶¶ 223-225. As part of Count VII, Plaintiff cites Complaint allegations from six other civil rights cases filed in this Court against the McCurtain County Jail, spanning various events from 2008 to 2018. *Id.*, pp. 37-49, ¶¶ 211-218. Accordingly, and as evidenced by the parties' conflation of the arguments as to these two causes of action, both Counts III and VII asserts claims against MCJT for failing to train jail personnel.

Although a municipality or other local governmental body is a "person" for purposes of § 1983, it "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *see also Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1191 (10th Cir. 2020) ("A core principle of *Monell* liability is that municipal entities are liable for only their own actions and not vicariously liable for the actions of their employees.") (citing

*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013)).

A. Constitutional Violation.  "The right to custodial medical care is well settled. 'The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same standard of medical care that the Eighth Amendment requires for convicted inmates.'" *Estate of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1262 (10th Cir. 2022) (quoting *Lance v. Morris*, 985 F.3d 787, 793 (10th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  While municipal liability is generally dependent on "whether a specific municipal officer violated an individual's constitutional rights[,]" *Crowson*, 983 F.3d at 1191, the Tenth Circuit has carved a "'limited exception' to the requirement of individual unconstitutional action '[w]here the sum of multiple officers' actions taken pursuant to municipal policy results in a constitutional violation, the municipality may be directly liable[; i.e.,] the municipality may not escape liability by acting through twenty hands rather than two.'"  *Buchanan v. Turn Key Health Clinics, LLC*, 2023 WL 6997404, at *7 (10th Cir. Oct. 24, 2023) (quoting *Crowson*, 983 F.3d at 1191).  Plaintiff's claims do not reflect the limited exception and instead reflect the general requirement of specific officers committing constitutional violations, as he alleges Ebert and Mitchell violated his constitutional rights.[2]

In addition to alleging a constitutional violation in making a claim against a municipal entity, "a plaintiff must allege facts showing (1) an official policy or custom,

---

[2] The undersigned Magistrate Judge has not recommended to dismiss all claims against Ebert and Mitchell, *see* Docket Nos. 85-86, although the undersigned Magistrate Judge has recommended dismissing the claims against Sivard.  *See* Docket No. 87.  Thus, the claims as to Ebert and Mitchell are sufficient for this step.

(2) causation, and (3) deliberate indifference." *Lucas v. Turn Key Health Clinics, LLC*, 58

F.4th 1127, 1145 (10th Cir. 2023) (citing *Crowson*, 983 F.3d at 1184).  A **municipal policy**

**or custom** can be demonstrated in a number of ways:

> (1) a formal regulation or policy statement; (2) an informal custom
> amounting to a widespread practice that, although not authorized by written
> law or express municipal policy, is so permanent and well settled as to
> constitute a custom or usage with the force of law; (3) the decisions of
> employees with final policymaking authority; (4) the ratification by such
> final policymakers of the decisions—and the basis for them—of subordinates
> to whom authority was delegated subject to these policymakers' review and
> approval; or (5) the failure to adequately train or supervise employees, so
> long as that failure results from deliberate indifference to the injuries that
> may be caused.

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283-1284 (10th Cir. 2019) (quoting

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks

and brackets omitted)).  Plaintiff's Counts III and VII both encompass the fifth option,

failure to train (including failure to train according to existing policies) resulting from

deliberate indifference to injuries that may be caused.  MCJT asserts Plaintiff's claims

regarding the policies lack the requisite specificity.

> "For **causation** . . . the challenged policy or practice must be closely related
> to the violation of the plaintiff's federally protected right."  *Hinkle v.
> Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1241 (10th Cir. 2020)
> (quotations omitted).  The policy or custom must be "the moving force
> behind the injury alleged."  *Schneider*, [717 F.3d at 770 (quotations
> omitted).]  And "[a] local government policymaker is deliberately indifferent
> when he deliberately or consciously fails to act when presented with an
> obvious risk of constitutional harm [that] will almost inevitably result in
> constitutional injury of the type experienced by the plaintiff."  *Burke* [*v.
> Regalado*, 935 F.3d 960, 997-998 (10th Cir. 2019)] (quotations omitted).  "In
> the municipal liability context," **deliberate indifference** "is an objective
> standard" that may be "satisfied if the risk is so obvious that the official
> should have known of it."  *Barney v. Pulsipher*, 143 F.3d 1299, 1307 n.5
> (10th Cir. 1998).

*Buchanan*, 2023 WL 6997404, at *8 (10th Cir. Oct. 24, 2023); *see also Johnson v. Davis Cnty.*, 2022 WL 830202, at *5 (10th Cir. Mar. 21, 2022) ("'In the municipal[-]liability context,' by contrast, 'deliberate indifference is an objective standard.'") (quoting *Barney*, 143 F.3d at 1307 n.5).   MCJT asserts that Plaintiff fails to properly allege a direct causal connection between the policy or custom and the injury alleged, making only conclusory allegations that are largely a recital of the elements of the claims.   MCJT also contends the First Amended Complaint fails to allege facts showing MCJT staff knew of a risk of harm that staff would use excessive force and then deny medical care for that use of force, and that the seven other cases cited in the First Amended Complaint are not sufficient or appropriately relevant.   Further, MCJT notes that Plaintiff does not identify the injuries he suffered (from either incident), when he requested medical care and from whom, and why his injuries were obvious to a lay person.   MCJT contends Plaintiff conflates the deliberate indifference standard with the negligence standard.   Finally, MCJT asserts Plaintiff's allegations are conclusory even with regard to facts within his control, such as the nature and extent of his injuries.

"To recover for a failure to train, [Plaintiff] needs to prove three elements:

1. the existence of a county policy or custom involving deficient training
2. the policy or custom's causation of an injury
3. the county's adoption of a policy or custom with deliberate indifference[.]"

*Lance*, 985 F.3d at 800 (citing *Waller*, 932 F.3d at 1283-1284).   "It is not enough, however, for [Plaintiff] to show that there were general deficiencies in the county's training program for jailers.   Rather, [he] must identify a specific deficiency in the county's training program

-13-

closely related to [Plaintiff's] ultimate injury, and must prove that the deficiency in training actually caused [his] jailer to act with deliberate indifference to [his] safety." *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999), *abrogated in part on other grounds, Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020).  To be clear, "[f]or a municipality (or sheriff, in this case) to be held liable for either a failure-to-train or failure-to-supervise claim, an individual officer (or deputy) must have committed a constitutional violation." *Estate of Burgaz by and through Zommer, v. Board of County Comm'rs for Jefferson County Colorado*, 30 F.4th 1181, 1189 (10th Cir. 2022) (citing *Crowson*, 983 F.3d at 1187 ("[A] failure-to-train claim may not be maintained [against a municipality] without a showing of a constitutional violation by the allegedly un-, under-, or improperly-trained officer.")).

B.  Policy or custom involving deficient training and Causation.  MJCT alleges Plaintiff did not identify a specific deficiency of training or supervision that is closely related to the alleged injury, or factual information to support this claim such as the nature of Plaintiff's injury or how any such alleged failure was highly predictable or plainly obvious.  Plaintiff, citing to the liberal pleading standard, asserts that he is not required to identify with particularity the policy or procedure of insufficient training upon which his claim for relief is based at this stage of the case, indicating that such information is also solely in the hands of a Defendant.  In support, he cites only out-of-circuit case law for this proposition.  *See Berry v. Borough of Verona*, 2009 WL 1531775, at *4-5 (W.D. Pa. June 1, 2009) (citing *Carter v. City of Philadelphia*, 181 F.3d 339, 357-358 (3rd Cir. 1999) ("The District Court's insistence that Carter must identify a particular policy and attribute

it to a policymaker, at the pleading stage without benefit of discovery, is unduly harsh."). Plaintiff also argues he described in detail the constitutional violations, the illegal policies and customs, and seven current or previous cases and causes of action against MCJT with similar claims, which is sufficient to allege that discovery will lead to evidence of failure to train regarding excessive use of force.

"In considering this theory, we are mindful of the Supreme Court's warning that '[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" *Waller*, 932 F.3d at 1285 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "When a *Monell* claim is based on an alleged failure to train, the plaintiff's allegations must 'reflect[] a 'deliberate' or 'conscious' choice by a [government entity].'" *Thomas v. El Paso Cnty., Colorado*, 2024 WL 4268478, at \*15 (D. Colo. Sept. 3, 2024), *report and recommendation adopted sub nom. Thomas v. El Paso Cnty.*, 2024 WL 4267868 (D. Colo. Sept. 23, 2024) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). Under the facts alleged, Ebert struck Plaintiff in January 2022 while he was in a restraint chair, without provocation. Additionally, Plaintiff alleges he tapped on his isolation cell camera to ask about previously-filed grievances, and Mitchell responded by using the pepper ball gun and locking him in the isolation cell for thirty more minutes before allowing him to shower.

Contrary to Plaintiff's assertion, in the *Tenth Circuit*, "[t]o survive a motion to dismiss, [a municipal liability] claim must allege sufficient facts to show that a *specific* policy or custom was the moving force behind the alleged violation." *Dalcour v. City of Lakewood*, 492 Fed. Appx. 924, 930 (10th Cir. 2012) (emphasis added). Plaintiff alleges

failures of training in the areas of (i) serious medical needs of inmates/detainees, (ii) obligations to protect inmates/detainees from violence at the hands of other inmates/detainees, and (iii) prohibitions against the use of constitutionally-excessive force on inmates/detainees, and that MCJT's failure of training caused his injuries and pain. Docket No. 68, pp. 26-27, ¶ 172-178 & pp. 50-51, ¶¶ 222-228. The second allegation is unrelated to the alleged constitutional violations of Ebert and Mitchell, or any other complaint allegation. As to the first and third, Plaintiff fails to articulate how such failures were the "moving force" behind his unspecified injuries. Plaintiff fails to identify specific deficiencies that connect even a generally-alleged policy with a specific injury; Plaintiff does not even separate the January 2022 incident from the April 2022 in describing the injuries he suffered, much less explain which injuries are attributable to which incident.

Furthermore, Ebert's alleged "use of force was improper not because of the amount of force he used, but because no force was warranted in the first place." *Waller*, 932 F.3d at 1288 ("Even an untrained law enforcement officer should have been well aware that any use of force in this situation—where a restrained detainee was simply addressing a judge at a hearing in a polite, calm voice—was inappropriate."). Indeed, "'specific or extensive training hardly seems necessary,' to put deputy sheriffs on notice that they may not violently assault a restrained detainee who is not acting in a threatening manner." *Waller*, 932 F.3d at 1288 (quoting *Schneider*, 717 F.3d at 774 (quoting *Barney*, 143 F.3d at 1308) (internal brackets omitted)). Accordingly, the undersigned Magistrate Judge finds Plaintiff has failed to establish the first two elements of a failure-to-train claim.

C.  Deliberate Indifference.  Even if the first two elements of a failure-to-train claim

-16-

are properly alleged, the undersigned Magistrate Judge finds that Plaintiff fails on the "stringent" element of deliberate indifference. *Waller*, 932 F.3d at 1284 (quoting *Connick*, 563 U.S. at 61). The Tenth Circuit has adopted the Second Circuit's three-part test for deliberate indifference:

> 1. [T]he county's policymakers know "'to a moral certainty' that [their] employees will confront a given situation."
> 2. "[T]he situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult."
> 3. "[T]he wrong choice . . . will frequently cause the deprivation of a citizen's constitutional rights."

*Lance*, 985 F.3d at 802 (quoting *Walker v. City of New York*, 974 F.2d 293, 297-298 (2d Cir. 1992) (quoting *City of Canton*, 489 U.S. at 390 n.10). Plaintiff cites seven cases in his First Amended Complaint to indicate that MCJT was on notice of deficiencies in training.[3] Docket No. 68, pp. 37-49, ¶¶ 211-218. Of the seven cited, only three appear to make reference to failures of training while the others purport to address allegations of excessive force. Regardless of number, however, the undersigned Magistrate Judge finds the cited cases are insufficient to place MCJT on notice of deficiencies in training. Plaintiff merely recites Complaint allegations from these cases, noting that one case ended in a settlement (of unidentified terms) but providing no information that any of them resulted in a jury verdict or order finding a constitutional violation.

---

[3] Although cited as part of Count VII (Docket No. 68, pp. 36-53, ¶¶ 209-235), the undersigned Magistrate Judge nevertheless incorporates these references into Count III (Docket No. 68, pp. 26-28, ¶¶ 170-181) as well. Although Count III only purports to incorporate the foregoing, *i.e.*, preceding, paragraphs, without reference to subsequent paragraphs, the undersigned Magistrate Judge chooses to address the First Amended Complaint on the merits as a whole rather than such a narrow parsing of the First Amended Complaint.

While it is not clear whether three incidents are sufficient to amount to a "widespread practice," the Tenth Circuit has "expressly held that '[o]ne prior incident, even if it was a constitutional violation sufficiently similar to put officials on notice of a problem, does not describe a pattern of violations.'" *Waller*, 932 F.3d at 1287 (quoting *Coffey v. McKinley Cty.*, 504 Fed. Appx. 715, 719 (10th Cir. 2012) (citing *Martin v. Malhoyt*, 830 F.2d 237, 255 (D.C. Cir. 1987) ("One instance, however egregious, does not a pattern or practice make.")). More important, however, is that the alleged incidents cited are only complaint allegations. Mere complaint allegations are insufficient to place a Defendant on notice that a certain aspect of training is constitutionally deficient. *See, e.g.*, *Est. of Lobato by & through Montoya v. Correct Care Sols., LLC*, 2017 WL 1197295, at *8 (D. Colo. Mar. 31, 2017) ("Unsubstantiated allegations from complaints filed against the CCS defendants, without more, do not put the CCS defendants on notice that the training of their nursing staff is deficient regarding opiate withdrawal.") (citing, *inter alia*, *Rowley v. Morant*, 2014 WL 11430980, at *2 (D.N.M. July 14, 2014) ("[T]he mere fact that a lawsuit was filed without any mention of the disposition of the lawsuit or whether the City was found to have violated any rights does not establish a pattern and practice."). "'Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.'" *Waller*, 932 F.3d at 1285 (quoting *Connick*, 563 U.S. at 62) (quoting *Brown*, 520 U.S. at 409). Plaintiff's First Amended Complaint accordingly does not show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can

reasonably be said to have been deliberately indifferent to the need." *Schneider*, 717 F.3d at 773 (quoting *City of Canton*, 489 U.S. at 390).

Accordingly, the undersigned Magistrate Judge finds Plaintiff has failed to state a claim against MCJT for failure to train, and that Counts III and VII should be dismissed.

### III.    Failure to Supervise.

To the extent Plaintiff's First Amended Complaint raises a separate failure-to-supervise theory of liability, Plaintiff makes only cursory and conclusory allegations, and fails to provide any facts describing how such supervision was inadequate or how such inadequate supervision caused any injury for either incident. Plaintiff therefore fails to "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570 on this theory of liability.

### IV.    Leave to Amend.

Plaintiff requests in his Response that, in the event dismissal is granted, he be given leave to amend his Complaint yet again. Plaintiff first moved to amend the original Complaint on December 31, 2024, following the filing of multiple Motions to Dismiss the original Complaint [Docket Nos. 36, 40-43]. The parties opposed the motion, and the undersigned Magistrate Judge denied the motion without prejudice due to Plaintiff's failure to comply with this Court's Loc. Civ. R. 7.1(k) (requiring the motion to amend "be accompanied by a proposed order submitted pursuant to the ECF Policy Manual which specifically sets forth what is being amended[,]" and attaching "a copy of the signed, proposed amended pleading."). Upon Plaintiff's failure to renew his motion to amend after the original Motions to Dismiss were fully briefed, the undersigned Magistrate Judge

nevertheless invited Plaintiff to file an Amended Complaint.  Plaintiff attempted to do so on March 4, 2024, but said Amended Complaint was stricken for failure to comply with this Court's instruction to include "[a] redline version of the original complaint ("Complaint") as amended" [Docket Nos. 66-67].  Plaintiff submitted a proper First Amended Complaint as directed by the Court on March 5, 2025 [Docket No. 68].  The undersigned Magistrate Judge finds that Plaintiff's repeated failure to cure deficiencies by amendments previously allowed adheres in favor of denying any additional opportunities to amend.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend may be denied for, *inter alia*, "repeated failure to cure deficiencies by amendments previously allowed[.]").

## CONCLUSION

Accordingly, the undersigned Magistrate Judge hereby RECOMMENDS that Defendants McCurtain County Jail Trust, Larry Hendrix, in his official capacity, and James C. McMillen's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support [Docket No. 70] be GRANTED as to Defendants McCurtain County Jail Trust and Larry Hendrix in his official capacity and DENIED AS MOOT as to Defendant James McMillen. Any objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

**DATED** this 13th day of June, 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**